# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BLUEFIELD

**JAMES DAVID GREEN,**
       **Plaintiff,**

v.                                              **CIVIL ACTION NO. 1:15-cv-03629**

**CAROLYN. W. COLVIN,**
**Acting Commissioner of Social Security,**
       **Defendant.**

## **PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383f. Presently pending before this Court are Plaintiff's Motion for Summary Judgement (ECF No. 12), Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 13) and Brief in Support of Defendant's Decision (ECF No. 14).

Claimant James David Green filed applications for DIB and SSI on September 8, 2011. Claimant alleged disability beginning December 3, 2010. These claims were denied initially on March 15, 2012, and upon reconsideration on October 25, 2012. Thereafter, Claimant filed a written request for hearing on November 9, 2012. On November 20, 2013, a video hearing was held with Claimant appearing in Bluefield, West Virginia. The Administrative Law Judge (ALJ) presided over the hearing from Roanoke, Virginia.[1] By decision dated December 24, 2013, the ALJ determined that Claimant was not entitled to benefits. Approximately on January 9, 2014,

---

[1] The ALJ's decision states that "After the hearing, counsel submitted medical records from C.P. Vasudevan, M.D., a pulmonologist. Those have been received, reviewed by the undersigned and made part of the record as Exhibit 27F (Tr. at 88).

Claimant sought review by the Appeals Council of the ALJ's unfavorable decision (Tr. at 84). In a notice dated January 28, 2015, the Appeals Council (AC) denied Claimant's request for review. The AC stated "We found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review" (Tr. at 1). The AC considered the following:

> In looking at your case we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We considered whether the Administrative Law Judge's action, findings or conclusion is contrary to the weight of the evidence currently of record. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.
>
> We also looked the treatment records dated January 1, 2014 to June 3, 2014 from Jack C. Meshel, M.D., the records dated March 3, 2014 to September 8, 2014 from Cuddalore P. Vasudevan, M.D., the records dated January 8, 2014 to March 20, 2014 from William Merva, M.D., and the records dated January 16, 2014 to October 10, 2014 from Wassim Saikali, M.D..
>
> The Administrative Law Judge decided your case through December 24, 2013. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled on or before December 24, 2013.
>
> If you want us to consider whether you were disabled after December 24, 2013, you need to apply again (Tr. at 2).

The Order of Appeals Council dated January 28, 2015, made the following additional evidence part of the record:

> Exhibit 28F    Treatment Records dated October 31, 2013 from William Merva, M.D. (2 pages).
>
> Exhibit 29F    Treatment Records dated September 22, 2010 to November 4, 2013 from Jack C. Meshel, M.D. (77 pages).
>
> Exhibit 30F    Treatment Records dated August 20,

2012 to August 8, 2013 from Wassim S. Saikali, M.D. (18 pages) (Tr. at 5).

Thereafter, Claimant filed a complaint with this Court pursuant to 42 U.S.C. § 405(g), seeking reversal or a remand of the ALJ's adverse decision (ECF No. 13).

<u>Standard of Review</u>

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2015). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and

claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2015). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date of December 3, 2010, through the date last insured December 31, 2015 (Tr. at 90). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairment of asthma/reactive airway disease, dyspnea, osteoarthritis of the joints, Sjogren's syndrome, tachycardia-bradycardia syndrome status post pacemaker placement, obstructive sleep apnea status post c-pap, obesity, learning disorder, pain disorder, affective disorder and anxiety disorder. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 91). The ALJ then found that Claimant has a residual functional capacity to perform work at the sedentary exertional level.[2] The ALJ held that Claimant could perform unskilled sedentary work in the national economy in jobs such as: inspector/packer, surveillance system monitor and small parts assembler (Tr. at 91-92). On this basis, benefits were denied (Tr. at 92).

---

[2] Claimant can stand and walk two hours total in an eight-hour workday; sit six or more hours in an eight-hour workday; occasionally perform operation of foot controls with bilateral lower extremities; and can never reach overhead with his left upper extremity. The claimant can never climb ladders, ropes and scaffolds and never crawl. He can occasionally climb ramps and stairs, crouch, kneel, stoop and bend; and frequently balance. Additionally, the claimant can have no concentrated exposure to temperature extremes; to dust, fumes, odors, chemicals and gases; to vibration, and to hazards such as dangerous machinery and unprotected heights. He is further limited to simple, easy to learn, repetitive, unskilled work and due to poor reading skills, the claimant is also limited to work that requires little or no reading (Tr. at 95).

### Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

### Claimant's Background

Claimant was born on July 24, 1967 (Tr. at 116). He last completed the sixth grade. (*Id.*) Claimant has a driver's license and a commercial driver's license (Tr. at 117). He failed his first attempt at obtaining both license but retook the test after a coworker, friends and Claimant's wife repeatedly read the materials to him (Tr. at 118-119). Claimant's wife completed the forms to apply for disability (Tr. at 119).

### The Medical Record

The medical record addressing Claimant's osteoarthritis and Sjogren's syndrome will be

discussed below. The undersigned respectfully recommends the District Judge remand this matter for reconsideration including the new and material evidence regarding osteoarthritis and Sjogren's syndrome admitted by the Appeals Council. Therefore, medical records pertaining to other impairments will not be discussed at this time.

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ's decision is not supported by substantial evidence (ECF No. 13). Claimant argues that the ALJ failed to properly evaluate Listing 12.05(C) for intellectual disability. Additionally, Claimant asserts that the ALJ failed to properly evaluate and consider limitations of the upper extremities. (*Id.*)

### Discussion

Additional evidence will be considered by the Appeals Council if it is new and material and relates to the period on or before the ALJ hearing decision. See 20 C.F.R. §§ 404.970(b) and 416.1470(b). SSA has issued HALLEX 1-3-3-6 to clarify when additional evidence is new and material. According to the HALLEX, this means the evidence is:

1. Not part of the record as of the date of the ALJ decision;
2. Relevant, i.e., involves or is directly related to issues adjudicated by the ALJ; and
3. Relates to the period on or before the date of the hearing decision, meaning it is (a) dated before or on the date of the hearing decision, or (b) postdates the hearing decision but is reasonably related to the time period adjudicated at the hearing.

New evidence, which is first submitted to the Appeals Council, is part of the record which goes to the district court for review. This is true whether the Appeals Council reviews the case or not. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 44 Soc. Sec. Rep. Serv. 248, Unempl. Ins. Rep. (CCH) (11th Cir. 1994).

It is not the role of the Court to search for evidence and articulate for the ALJ's decision

which the ALJ himself did not articulate. *See Rhinehardt v. Colvin*, No. 4:12-CV-101-D, 2013 U.S. Dist. LEXIS 75948, 2013 WL 2382303, *2 (E.D.N.C. May 30, 2013) (citation omitted) ("If the ALJ fails to explain why an impairment does not meet the listing criteria, the decision is deficient."); *Tanner v. Astrue*, C/A No. 2:10-1750-JFA, 2011 U.S. Dist. LEXIS 105731, 2011 WL 4368547, *4 (D.S.C. Sept. 19, 2011) (stating "if the ALJ did not rationally articulate grounds for her decision, this court is not authorized to plumb the record to determine reasons not furnished by the ALJ"). In *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013), the Fourth Circuit stated that a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed 2d 643 (1985)).

While the ALJ is required to weigh the relevant medical opinions, he "need not discuss every shred of evidence in the record," and is under no duty to explicitly refer to each exhibit. *Reynolds v. Colvin*, 2014 WL 2852242, at *21 (S.D. W.Va. Aug 19, 2014), *adopted by* 2014 WL 4852250 (S.D. W.Va. September 29, 2014; *McGrady v. Astrue*, 2011 WL 4828884, at *20 (N.D. W.Va. September 16, 2011) (quoting *Mays v. Barnhart,* 227 F. Supp. 2d 443, 448 (E.D. Pa. 2002), *aff'd* 78 F. App'x 808 (3d Cir. Oct. 27, 2003)) ("[t]he ALJ is not required to give an exhaustive discussion of all the exhibits. 'Consideration of all the evidence does not mean that the ALJ must explicitly refer to each and every exhibit in the record.'").

The Appeals Council must consider "new and material evidence" presented after the ALJ's decision "where it relates to the period on or before the date of the [ALJ's] decision." 20 C.F.R. §§ 404.970(b) and 416.1470(b). "If qualifying new evidence is presented, the Appeals Council

must evaluate the entire record, including the new evidence. If it finds that the ALJ's decision is contrary to the weight of the evidence currently of record, it will then review the ALJ's decision. The Appeals Council may thereafter adopt, modify or reverse the ALJ's decision, or it may remand the case to the ALJ." *Ridings v. Apfel*, 76 F. Supp.2d 707, 709 (W.D. Va. 1999) (citing 20 C.F.R. §§ 404.970(b) and 404.979 (1999)).

This Court must review the record as a whole, including the new evidence, in order to determine if the Commissioner's decision is supported by substantial evidence. *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991). Although new evidence of the nature submitted by Claimant to the Appeals Council must "relate to the period on or before the date of the administrative law judge hearing decision," 20 C.F.R. §§ 404.970(b) and 416.1470(b), "[t]his does not mean that the evidence had to have existed during that period. Rather, evidence must be considered if it has any bearing upon whether the Claimant was disabled during the relevant period of time." *Reichard v. Barnhart*, 285 F. Supp.2d 728, 733 (S.D. W. Va. 2003); *see also Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987) ("medical evaluations made subsequent to the expiration of a claimant's insured status are not automatically barred from consideration and may be relevant to prove a previous disability").

Regarding the requirement of 42 U.S.C. § 405(g) that the claimant show good cause for not submitting the evidence earlier, that provision should be interpreted as applying to evidence first submitted to the district court, not to evidence that was submitted to the Commissioner during the administrative proceedings. As the Fourth Circuit stated, there is no requirement that a claimant show good cause in seeking to present new evidence to the Appeals Council. *Wilkins v. Secretary, Dep't of HHS,* 953 F.2d 93, 96 n. 3 (4th Cir. 1991). Instead, "[t]he Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review 'if the

8

additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" *Wilkins*, 953 F.2d at 95-96 (quoting *Williams,* 905 F.2d at 216.) Evidence is new "if it is not duplicative or cumulative." *Id.* at 96 (citing *Williams*, 905 F.2d at 216). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* (citing *Borders v. Heckler*, 777 F.2d 954, 956 (4th Cir. 1985)).

Claimant's functional report states that he "sometimes can't hardly button buttons [or] put on socks" (Tr. at 382). He stated that his wife takes his socks off and cuts his fingernails and toenails (Tr. at 409). He reported that his arms and hands hurt. He stated that he shakes and that due to the shaking he loses food off his fork when feeding himself and he has to keep a cup half full. (*Id.*) He stated that he can't lift anything and has trouble getting in and out of the tub. The pain keeps him awake and describes the pain as constant and severe. Claimant reported that he can only lift 5 pounds (Tr. at 386). He stated that he is unable to carry groceries due to the pain.

Claimant's treating physician William A. Merva, M.D., reported impressions of essential tremor, arthralgias/possible fibromyalgia and insomnia (Tr. at 490). On August 3, 2011, Claimant's treating rheumatologist, Wassim Saikali, M.D., reported that Claimant tested positive with ANA[3] even though the same report stated that "Clinically he does not have any evidence of rheumatoid or lupus but we will check the ANA panel, ESR and C-reactive protein" (Tr. at 504). Dr. Saikali stated that "X-rays of the hands and knees were done that showed no evidence of erosions." Dr. Saikali's impression included polyarthalgias which he stated was most likely early

---

[3] When antibodies, made by white blood cells, make a mistake and identify normal, natural-occurring proteins in our bodies as being "foreign" and dangerous they are called autoantibodies. Autoantibodies start the cascade of inflammation, causing the body to attack itself. The antibodies that target "normal" proteins within the nucleus of a cell are called antinuclear antibodies (ANA). The presence of large amount of ANAs can indicate an autoimmune disease such as lupus, Sjogren's syndrome and rheumatoid arthritis. *See Antinuclear Antibodies (ANA)*, www.rheumatology.org/I-Am-A/Patient-Caregiver/Diseases-Conditions/Antinuclear-Antibodies-ANA (last visited August 22, 2016).

osteoarthritis of the knees and that he would consider injecting Claimant's knees "if he is having any problem." (*Id.*)

On August 30, 2011, and October 31, 2011, Dr. Saikali reported seeing Claimant for a follow-up visit for his osteoarthritis and Sjogren's syndrome (Tr. at 506). Claimant complained of pain and stiffness in the joints of his hands and knees. Upon examination, Dr. Saikali reported "degenerative nodules in the second and third DIP and PIPs." Dr. Saikali's progress notes dated February 7, 2012, reported that upon exam he found Claimant to have "Mild tenderness over the second and third PIP" (Tr. at 548).

On May 5, 2012, Dr. Merva saw Claimant for follow-up visit for his headaches, insomnia and joint pain (Tr. at 555). Dr. Merva reported that Claimant was experiencing most of the pain in his legs and hips. Dr. Merva reported that Claimant did not exhibit a tremor and that Claimant's prescription for Corgard was working for his tremor. (*Id.*)

On May 8, 2012, Dr. Saikali saw Claimant for a follow-up visit regarding his osteoarthritis and "probable Sjogren's" (Tr. at 547). Claimant complained of pain in his joints. Dr. Saikali reported "No swelling in the wrists or elbows." On August 20, 2012, Dr. Saikali saw Claimant for a follow-up visit for his "inflammatory arthritis and Sjogren's syndrome" (Tr. at 802). Claimant reported experiencing pain and discomfort associated with stiffness and soreness in the joints in his hands, knees, neck, shoulders and arm. Claimant reported being stiff in the morning for half an hour in his hands and wrists. (*Id.*) Dr. Saikali's impression listed inflammatory arthritis, osteoarthritis and possible Sjogren's syndrome. Bloodwork collected on August 20, 2012, reflected that Claimant tested positive for ANA (Tr. at 808). On September 17, 2012, Frederick W. Barker, M.D. reported upon consultation that Claimant's extremities showed "Trace edema" (Tr. at 774).

On February 14, 2013, Ruth Rhodes, PA-C, reported seeing Claimant for follow-up on inflammatory osteoarthritis, Sjrogen syndrome and osteoarthritis (Tr. at 810). Claimant reported occasional joint pain and stiffness in his hands and knees "but overall is doing well." (*Id.*) Ms. Rhodes reported that upon examination Claimant did not have hot or swollen joints. She reported that Claimant had full range of motion of the upper extremities.

On August 7, 2013, Dr. Saikali saw Claimant for a follow-up visit for Sjogren's syndrome and osteoarthritis (Tr. at 811). Dr. Saikali reported:

> His main complaint is some low back pain which has been mild to moderate in nature associated with stiffness and soreness worse with prolonged standing. This apparently has been a chronic problem, not necessarily recent but he went to the ER one time and they told him it was arthritis, x-rays were done. He is not doing any physical therapy. The patient's pain is mild dull and achy in nature associated with stiffness and soreness. He, in addition is having mild pain and discomfort in the hands. He is complaining of some mild knee pain and discomfort. (*Id.*)

The medical records admitted into evidence included treatment notes by William A. Merva, M.D., dated October 31, 2013 (Tr. at 723). Dr. Merva stated that Claimant's "essential tremors came back in a major way." (*Id.*) Jack C. Meshal, M.D. saw Claimant on February 28, 2011, and reported that claimant "has had chest pain going into the left arm with diaphoresis" and that Claimant's extremities show 1+ edema (Tr. at 744). On May 10, 2011, August 9, 2011, December 29, 2011, February 13, 2012, September 11, 2012, July 9, 2012, November 5, 2012, and April 26, 2013, Dr. Meshal reported that Claimant was experiencing "chest pain going into the left arm with some diaphoresis" and that his extremities "show trace edema" (Tr. at 735). Dr. Meshal's treatment notes on May 14, 2013, August 6, 2013, and November 4, 2013, reported that Claimant's extremities showed traces of edema (Tr. at 729).

The ALJ found that Claimant suffered from severe impairments including osteoarthritis of

the joints and Sjogren's syndrome (Tr. at 90). However, the ALJ held that the impairment or combination of impairments did not medically equal the severity of one of the listed impairments in Supbart P, Appendix 1 (Tr. at 91). Regarding osteoarthritis, the ALJ held that "the objective evidence simply fails to indicate that the claimant has functional loss based on musculoskeletal impairment" (Tr. at 91-92).

In the ALJ's residual functional capacity (RFC) assessment, Claimant's was restricted to "Never reach overhead with his left upper extremity" (Tr. at 95). The ALJ stated that Claimant "reported he stopped work due to heart problems and pain in his legs, feet, back and arms as well as chest pain" (Tr. at 96). The ALJ stated "the claimant indicated he had pain in his left shoulder and that it limited his ability to raise his left arm." (*Id.*) The ALJ's decision stated "In terms of pain, the claimant reported it was constant especially in his joints and that he was on medication for it and that it increased with activity." The ALJ stated that Claimant indicated having difficulty holding a pencil, that he could not open jars with is left hand and that he experiences pain in the right hand due to an old chainsaw accident. (*Id.*) Ultimately, the ALJ found that the medical evidence of record did not support Claimant's alleged functional limitation in regards to osteoarthritis of the joints and Sjogren's syndrome. The ALJ stated that he took Claimant's alleged functional limitations into account within the RFC and reduced it accordingly.

The ALJ's discussion on Claimant's osteoarthritis and Sjogren's syndrome included the following:

> In regards to the claimant's osteoarthritis of the joints and Sjogren's syndrome, the medical evidence of record indicates the claimant treated with a rheumatologist during the period at issue and received medication such as Salagen and Plaqhenil.
> …
> Laboratory studies indicated a positive ANA (Exhibits 3F6 and 21F2). However, x-rays of the claimant's hands and knees showed no erosions and were normal (Exhibit 5F4).

> …
> The claimant's rheumatologist, Wassim Saikali, M.D., indicated that the claimant presented with degenerative nodules in the second and third DIP and PIPs and degenerative hypertrophy of the knees but had no hot or swollen joints, full range of motion of the upper extremities and full range of motion of bilateral knees (Exhibits 5F5, 11F and 21F10). Clinical signs upon examination and imaging studies in the treatment record do not support the claimant's alleged limitations in regards to the use of his bilateral hands. In terms of chronic pain due to the claimant's osteoarthritis and Sjogren's syndrome, the record does not indicate any emergency room visits or hospitalizations for acute pain during the period at issue. Additionally, more recent treatment records from Dr. Saikali in February and August 2013 noted the claimant complained of only mild joint pain (Exhibit 21F10-11). (Tr. at 97).

This Court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the ALJ's findings. The additional records, marked as Exhibits 28F, 29F and 30F, were admitted into evidence by the Appeals Council. The evidence is new and material. As the new evidence was submitted to the AC, good cause is not required. A portion of the contents of the newly admitted evidence pertains directly to Claimant's continued complaints and treatment for osteoarthritis and Sjogren's syndrome. As such, there is a reasonable possibility that the newly admitted evidence would have changed the outcome of the ALJ's decision. Therefore, the ALJ's decision is not supported by substantial evidence as he has not reviewed the record as a whole.

Treating Physicians

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1527(c)(2)(i) and 416.927(c)(2)(i) (2015). Thus, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory

diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) (2015). Under §§ 404.1527(c)(2)(ii) and 416.927(c)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(c)(3), (4) and (5) and 416.927(c)(3), (4) and (5) add the factors of supportability, consistency and specialization. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." §§ 404.1527(c)(2) and 416.927(c)(2).

Under §§ 404.1527(c)(1) and 416.927(c)(1), more weight generally is given to an examiner than to a non-examiner. Sections 404.1527(c)(2) and 416.927(c)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." *Martin v. Secretary of Health, Education and Welfare*, 492 F.2d 905, 908 (4th Cir. 1974); *Hayes v. Gardener*, 376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).

The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence in determining whether a claimant is disabled under the Act. *Johnson v. Barnhart*, 434 F.3d 650, n. 5 (4th Cir. 2005). The ALJ retains the duty to analyze treating source opinions and judge whether they are well-supported by medically acceptable evidence and consistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). If a medical opinion is not supported by relevant evidence or it is inconsistent with

the record as a whole, it will be accorded significantly less weight. *See Craig*, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

Moreover, a treating physician's opinion can never bind the ALJ on issues reserved to the ALJ, such as a claimant's RFC or whether a claimant is able to work. These decisions are solely the responsibility of the ALJ because they are administrative findings that are dispositive of a case; they are not medical issues. *See* 20 C.F.R. §§ 404.1527(d)(1)-(3) and 416.927(d)(1)-(3); Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2 (S.S.A.).

In weighing a medical opinion, an ALJ will consider the examining relationship; the treatment relationship, including the length of treatment, the frequency of examination and the nature and extent of the treatment relationship; the relevant evidence, including medical signs and laboratory findings, supporting the opinion; the consistency of an opinion with the record as whole; the specialization of the treating physician; and any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6) and 416.927(c)(1)-(6). An ALJ does not need to address each individual factor in making his decision, but should sufficiently demonstrate his analysis of the relevant evidence. See *Pinson v. McMahon*, Civil Action No. 3:07-1056-PMD-JRM, 2009 WL 763553, at *10 (D.S.C. Mar. 19, 2009).

The report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record. *Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir. 1984), *citing Hall v. Harris*, 658 F.2d 260, 265-66 (4th Cir. 1981) (stating that the physical capacities evaluation prepared by the state agency's physician, if accepted at face value, might support a conclusion that the claimant could do sedentary, light, or even medium work, but that the physician never saw or examined her and based his evaluation on

medical reports which simply do not furnish this information) *and Hayes v. Gardner*, 376 F.2d 517, 521 (4th Cir. 1967) (concluding that in view of the opinion evidence as to the existence of a disability, combined with the overwhelming medical facts, the uncontradicted subjective evidence, and the claimant's vocational background, the opinion of a doctor who never examined or treated the claimant could not serve as substantial evidence to support the Commissioner's finding). A district court in North Carolina stated that the opinion of a non-examining, non-treating physician is not substantial evidence when it is contradicted by all other evidence in the record. *Mathis by Mathis v. Shalala*, 890 F. Supp. 461, 463 (E.D.N.C. 1995).

A reviewing court cannot determine if an ALJ's findings are supported by substantial evidence unless he explicitly indicates the weight he gave to all of the relevant evidence. *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). In the present matter, the ALJ did not state what weight, if any, was given to treating physicians Dr. Saikali, Dr. Merva and Dr. Mershal. The ALJ gave weight to the reviewing physicians as follows:

> The undersigned gives little weight to the opinion of Rogelio Lim, M.D., who reviewed the medical evidence for the State agency and found the claimant capable of performing work at the medium level of exertion (Exhibit 1A). However, additional medical evidence received after his determination indicates the claimant is further limited by his osteoarthritis, Sjogren's syndrome, obstructive sleep apnea and tachycardia-bradycardia syndrome status post pacemaker placement, which the undersigned has taken into account within the above residual functional capacity (Exhibits 11F, 15F, 18F, 19F and 21F).
> As for the opinion of Rabah Boukhemis, M.D., who reviewed the medical evidence for the State agency in August 2012, the undersigned also gives it little weight (Exhibit 5A). Additional medical evidence received after his determination indicates the claimant is further limited by his osteoarthritis, Sjogren's syndrome, obstructive sleep apnea and tachycardia-bradycardia syndrome status post pacemaker placement, which the undersigned has taken into account within the above residual functional capacity (Exhibits 11F, 15F, 18F, 19F and 21F). Dr. Boukhemis found the claimant capable of performing work at the light level of exertion (Exhibit

5A) (Tr. at 99).

The ALJ failed to address and analyze the factors listed in 20 C.F.R. § 404.1527(c) and 416.927(c), discussed *supra*, in determining the weight given to Claimant's treating physicians for osteoarthritis and Sjogren's syndrome. The Court cannot conclude the decision is supported by substantial evidence without, at a minimum, weighing the Claimant's treating physicians' opinions for his osteoarthritis and Sjogren's syndrome. The ALJ failed to demonstrate the consideration and analysis of the treating physicians' length of treatment, nature and extent of treatment, frequency of examination and specialization.

## Conclusion

The undersigned respectfully recommends that the District Judge find that the ALJ failed to consider and analyze all the factors listed in Social Security Regulations in determining the proper weight to give treating source opinions. Although the ALJ gave great weight to the opinions of reviewing Medical Experts, the ALJ failed to provide a thorough treating source analysis. Additionally, the undersigned respectfully suggests the District Judge find that the ALJ's decision is not supported by substantial evidence of record. This Court makes no recommendation as to Claimant's remaining arguments. These issues may be addressed on remand.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Plaintiff's Motion for Summary Judgment (ECF No. 12) to the extent Plaintiff seeks remand pursuant to sentence four of 42 U.S.C. § 405(g), **DENY** the Defendant's Brief in Support of Defendant's Decision (ECF No. 14), **REVERSE** the final decision of the Commissioner, and **REMAND** this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: August 23, 2016

Dwane L. Tinsley
United States Magistrate Judge